## GEORGIANNE PERRY *v.* HOSPITAL OF ST. RAPHAEL
## (6679)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued October 5—decision released November 22, 1988

*Patrick J. Filan,* with whom, on the brief, was *W. Patrick Ryan,* for the appellant (defendant).

*Bruce D. Jacobs,* with whom, on the brief, was *Regina DeLuca,* for the appellee (plaintiff).

DuPont, C. J. The plaintiff brought this action against the defendant hospital to recover damages for injuries sustained in a fall at the hospital that occurred subsequent to her eye surgery. After a trial by jury, a verdict was returned for the plaintiff in the amount of $170,000. The trial court denied the defendant's motion for judgment notwithstanding the verdict.

The defendant appeals, claiming that the trial court erred (1) in granting the plaintiff's motion to preclude the defendant's expert witness from offering testimony, (2) in admitting into evidence a statement contained in the records from a subsequent hospitalization of the plaintiff, and (3) in failing to seat an alternate as a sixth juror designated by lot pursuant to General Statutes § 51-243 (d).

This action was commenced in February, 1984. On March 12, 1987, the plaintiff filed interrogatories, requesting disclosure by the defendant of expert witness information. On May 14, 1987, the defendant answered that it had not yet selected its expert witnesses for trial. On September 28, 1987, the defendant disclosed James Shelton, an ophthalmologist, as an expert witness but failed to disclose the substance of the facts and opinions to which the witness was to testify or a summary of the grounds of his opinion as required by Practice Book § 220 (A) (1).[1] On October 28, 1987, less than two weeks before jury selection began, the defendant filed an additional response to the plaintiff's request for disclosure, in which it provided the substance of the facts and opinions to which

[1] Practice Book § 220 (A) (1) provides: "A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."

Shelton was expected to testify and disclosed for the first time an additional expert.[2]

Subsequently, the plaintiff filed a motion for an order prohibiting the defendant from introducing at trial the testimony of its expert witnesses. The trial court, in granting the plaintiff's motion, found that the defendant had failed to provide full, open and timely disclosure despite ample opportunity to do so. The court noted the length of the litigation and the fact that the plaintiff had fully disclosed her experts more than one year before the defendant's disclosure.

"The discovery rules are designed to facilitate trial proceedings and to make a 'trial less a game of blindman's [buff] and more a fair contest with the basic issues and facts disclosed to the fullest practical extent.' " *Perez* v. *Mount Sinai Hospital,* 7 Conn. App. 514, 519, 509 A.2d 552 (1986), quoting *United States* v. *Procter & Gamble,* 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). When a party fails to comply with the requirements of Practice Book § 220, the trial court is authorized, pursuant to Practice Book § 231 (d)[3] to prohibit the party from introducing designated matters into evidence. See *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 106–107, 476 A.2d 1074 (1984). " ' "The court's decision on whether to impose the sanction of excluding the expert's testimony concerning causation rests within the sound discretion of the court." [Id.,] 107. Unless the trial court had abused a legal discretion, its action should not be disturbed;

---

[2] Although the trial court excluded the testimony of both expert witnesses, the defendant contests on appeal only the exclusion of Shelton's testimony.

[3] Practice Book § 231 provides: "If any party has failed to answer interrogatories or to answer them fairly . . . or has failed otherwise substantially to comply with any other discovery order . . . the court may, on motion, make such order as the ends of justice require. Such orders may include the following . . . (d) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence. . . ."

in making this analysis, we must afford the decision of the trial court great weight and allow every reasonable presumption to be made in favor of its correctness. *Timm* v. *Timm,* 195 Conn. 202, 206, 487 A.2d 191 (1985); *Dudas* v. *Ward Baking Co.,* 104 Conn. 516, 518, 133 A. 591 (1926). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." *Timm* v. *Timm,* supra, 207; *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 611, 153 A.2d 463 (1959); *Sturdivant* v. *Yale-New Haven Hospital,* supra, 108. . . .' *Perez* v. *Mount Sinai Hospital,* [supra]." *Caccavale* v. *Hospital of St. Raphael,* 14 Conn. App. 504, 507–508, 541 A.2d 893, cert. denied, 208 Conn. 812, 545 A.2d 1107 (1988); see *Corosa Realty* v. *Covenant Ins. Co.,* 16 Conn. App. 684, 689, 548 A.2d 473 (1988). We conclude that the trial court did not abuse its broad discretion in finding that the defendant had failed to comply with discovery requirements and, thus, correctly precluded the defendant's expert witness from testifying.

The defendant's second claim of error is that the trial court erred in admitting into evidence statements contained in medical records made in connection with a surgical procedure performed subsequent to the surgery for which the plaintiff was hospitalized at the time of her fall. At the time of her fall in January, 1982, the plaintiff was hospitalized at the defendant hospital for cataract surgery on her right eye. The plaintiff underwent a similar surgical procedure at Yale-New Haven Hospital on her left eye in 1983. The discharge summary recorded in connection with the latter procedure contained an entry indicating that the plaintiff had undergone previous cataract surgery on her right eye which had been complicated by a postoperative fall.

The defendant objected to the admission of the unedited discharge summary and took exception to the trial court's overruling of that objection. The defend-

ant claims that the statement, as to the cause of the complication of the plaintiff's right eye surgery, was not made for the purpose of present diagnosis and treatment of her left eye, and thus was not within the scope of the hearsay exception for hospital records. Accordingly, the defendant contends that the statement contained on the discharge summary should have been deleted by the trial court. We disagree.

"Pursuant to General Statutes § 52-180, business records, although otherwise hearsay, are admissible if certain conditions are satisfied. One such condition is that they must have been made in the regular course of business. *State* v. *Waterman,* 7 Conn. App. 326, 341, 509 A.2d 518 [, cert. denied, 200 Conn. 807, 512 A.2d 231] (1986). Under General Statutes § 4-104, hospital records qualify for admission subject to the same conditions. ' "The real business of a hospital is the care and treatment of sick and injured persons. It is not to preserve information for use in litigation. Accordingly, even though it might be the custom of a hospital to include in its records information relating to questions of liability for injuries which had been sustained by its patients, such entries . . . would not be made admissible by the statute unless they also contained information having a bearing on diagnosis or treatment." *D'Amato* v. *Johnston,* 140 Conn. 54, 61, 97 A.2d 893 [1953].' *Kelly* v. *Sheehan,* 158 Conn. 281, 285, 259 A.2d 605 (1969). 'This means that the relevancy of the entry in question to the business of the hospital at the time the entry was made—that is to the care and treatment of the patient [at the time of her admission]—determines its admissibility and is a preliminary question of fact for the trial judge. *D'Amato* v. *Johnston,* supra. His decision must stand unless it is one which he would not reasonably have reached.' *Maggi* v. *Mendillo,* 147 Conn. 663, 667, 165 A.2d 603 (1960)." *State* v. *Egan,* 9 Conn. App. 59, 68, 514 A.2d 493, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986).

Under the facts of this case, the court could reasonably have concluded that the entry of the statement was relevant to the treatment and diagnosis of the condition of the plaintiff's left eye. This is not a case, as the defendant suggests, analagous to that of *Maggi* v. *Mendillo,* supra, where the plaintiff attempted to introduce into evidence hospital records made in connection with incomplete abortion complications that contained a statement concerning the plaintiff's laryngeal nerve. There, the court found that the plaintiff's throat condition had no bearing on or connection with the diagnosis or treatment of the incomplete abortion complications.

Here, at the time the statement was made, the plaintiff was about to undergo cataract surgery on her left eye. The statement was made in connection with events that had occurred shortly after the previous cataract surgery on the plaintiff's right eye. It seems apparent that a hospital performing surgery on one eye would need to be aware of complications that arose subsequent to the same or similar surgical procedure on the other eye. In coming to a proper diagnosis and plan of treatment, the hospital would be aided by knowing the cause of a complication that resulted from a similar previous surgery. See *State* v. *Egan,* supra, 69. Accordingly, the trial court did not err in refusing to delete the entry in question from the discharge summary.

The defendant's final claim of error is that the trial court erred in assigning an alternate juror to be seated on the regular jury panel, rather than drawing lots as provided by General Statutes § 51-243 (d). The defendant claims that the court improperly impanelled as the sixth juror an alternate who was appointed by the court to sit on the regular panel.

General Statutes § 51-243 (d) provides in pertinent part: "If any juror is so excused or dies, the court may

order that an alternate juror who is designated by lot to be drawn by the clerk, shall become a part of the regular panel and the trial shall then proceed as though the alternate juror had been a member of the regular panel from the time when the trial was begun." The defendant claims that the language of § 51-243 (d) regarding the choosing of alternates by lot is mandatory and does not leave the manner of seating an alternate on the regular panel to the court's discretion.

The plaintiff contends that the language of § 51-243 (d) leaves the method of seating alternates to the court's discretion and, in the alternative, that the mandatory language of § 51-243 (d) applies only to the seating of alternates during trial, and not, as is the case here, to the seating of alternates prior to the jury's being sworn.

The trial court's finding of facts reveals the following. At the time the present case was transferred to the trial court for trial, the parties had selected a jury of six and two alternates. Prior to the jury's being sworn, the trial court excused a member of the regular jury because of illness. Prior to commencement of selection of an additional alternate, a second juror was excused for personal reasons. The parties and the trial court mistakenly thought that the first and second excused jurors were one and the same person and that there were five members of the regular jury panel and two alternates left. At that time, defense counsel suggested and the plaintiff's counsel agreed that the first person originally selected as an alternate be seated as a regular juror. Thereafter, an additional alternate was selected to replace the alternate seated on the regular panel.

It then was determined that two members of the original jury panel of six had in fact been excused, and the question arose as to the method to be employed in seating a second alternate. At that time, the second

original alternate and the newly selected alternate were available. The defendant declined to agree to the plaintiff's request that the second original alternate be seated as a regular juror and requested that the juror be selected by lot pursuant to § 51-243 (d). The trial court concluded that the parties should follow the previous selection procedure and that it would be inappropriate to use a different method to seat a second alternate. The court then ordered the second original alternate seated.

The facts of this case render it unnecessary to determine the correct interpretation of the statute. Prior to the selection of an additional alternate, two vacancies actually existed on the regular panel. Had the trial court been aware of the two vacancies that existed, both original alternates would have been selected to replace the two excused jurors. Whether the court appointed the two original alternate jurors to the regular panel or chose by lot would have made no difference in the composition of the jury panel.

We therefore find that, under the particular facts of this case, there was no error in the method employed by the trial court to seat the alternate juror on the regular panel.

There is no error.

In this opinion the other judges concurred.